Case 4:20-cv-01313   Document 21   Filed on 09/17/21 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
September 17, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CARLA RENEE HANSFORD, § <br> § <br> Plaintiff. § <br> § <br> VS. § <br> § <br> KILOLO KIJAKAZI, ACTING § <br> COMMISSIONER OF THE SOCIAL § <br> SECURITY ADMINISTRATION, § <br> § <br> Defendant. § | CIVIL ACTION NO. 4:20-cv-01313 |

## MEMORANDUM AND ORDER

Claimant Carla Renee Hansford seeks judicial review of an administrative decision denying her application for disability insurance benefits under Titles II and XVI of the Social Security Act (the "Act"). *See* Dkt. 1. Before me, with the consent of the parties, are competing motions for summary judgment filed by Hansford and Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner").[1] *See* Dkts. 18, 19. After reviewing the briefing, the record, and the applicable law, Hansford's motion for summary judgment is **GRANTED**, the Commissioner's motion for summary judgment is **DENIED**, and this case is remanded to the Social Security Administration for further proceedings.

## BACKGROUND

Hansford applied for disability insurance benefits under Titles II and XVI of the Act on April 26, 2017, alleging disability beginning February 2, 2017. Her application was denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a hearing and found that Hansford was not

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is automatically substituted as a party under Federal Rule of Civil Procedure 25(d).

disabled. Hansford filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to (1) whether the Commissioner applied the proper legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (cleaned up). The ALJ uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past

2

relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id.* Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that Hansford had not engaged in substantial gainful activity since February 2, 2017.

The ALJ found at Step 2 that Hansford suffered from "the following severe impairments: hypogammaglobulinemia (SCID), tracheobronchomalacia, chronic bronchitis, diabetes mellitus, obstructive sleep apnea, obesity, hypertension, gastroesophageal reflux disease and osteoarthritis (20 CFR 404.1520(c) and 416.920(c))." Dkt. 14-3 at 14.

At Step 3, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments.

Prior to consideration of Step 4, the ALJ determined Hansford's RFC as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant cannot climb ladders, ropes or scaffolds. She is unable to work at unprotected heights. The claimant should avoid concentrated exposure to noxious fumes and gases. In addition, the claimant can work in an office, booth or cubicle as well as wear a mask while working to protect from airborne germs. The claimant is able to work with things and not people. She should not have direct contact

3

with the public but can have incidental contact with the public. She may have contact with co-workers and supervisors with concern that she not be exposed to infections, and would require precautions such as [a] mask as needed. To a large extent contact with usual persons is permitted as the body adapts to this, it is the new person that proves a problem. Therefore, precautions would be more effective during the first part of employment. This is fully considered in the vocational testimony.

*Id.* at 18.

At Step 4, the ALJ found that Hansford was unable to perform her past work. And, at Step 5, the ALJ, relying on the testimony of a vocational expert ("VE"), concluded that "there are jobs that exist in significant numbers in the national economy that [Hansford] can perform." *Id.* at 26.

## DISCUSSION

The issue on appeal is whether the ALJ met his burden of showing that there are a sufficient number of jobs in the local or national economy that Hansford can perform.[2] *See White v. Astrue*, 239 F. App'x 71, 72 (5th Cir. 2007) (placing burden on the Commissioner at Step 5). To satisfy his burden, the ALJ must identify jobs that a person with Hansford's RFC could perform "without requiring employers to provide reasonable accommodations." *Belcher v. Berryhill*, No. 6:17-cv-53, 2018 WL 3621211, at *5 (S.D. Tex. June 22, 2018).

As discussed above, the ALJ determined that Hansford would need to wear a face mask to shield herself from airborne pathogens and bacteria. *See* Dkt. 14-3 at 18. The VE testified that there were jobs available in the national economy that Hansford could perform with a face mask, but she explained that a person requiring a face mask in the workplace would need to provide a hypothetical employer with a medical statement. *See id.* at 67. The VE clarified that people

---

[2] Hansford also argues that the ALJ improperly weighed the opinion evidence of Hansford's treating physician, Dr. Quesada. Because I find the accommodated work issue to be dispositive, I do not reach the treating physician argument.

4

routinely wear masks in the workplace "[o]nce they get the work statement and [it's ap]proved by the employer." *Id.* at 68. Then came this exchange between the ALJ and the VE:

```
Q  Do you think that would reduce the numbers of the jobs that
you've identified?
A  With the requirement for the mask?
Q  Yeah.
A  No.
```

*Id.* That was the end of the discussion. From this brief exchange, the ALJ determined that Hansford was not disabled because she could perform jobs existing in the national economy. Based on the ALJ's RFC and the exchange with the VE, Hansford argues that the mask requirement, as described by the VE, impermissibly constitutes a reasonable accommodation under the Americans with Disabilities Act ("ADA").[3]

Federal courts have explained that the ALJ may not include in his hypothetical, and a VE may not assume, that the claimant will receive a reasonable accommodation under the ADA when determining whether there are jobs existing in the national economy that the claimant can perform. *See Arthur v. Saul*, No. 2:19-cv-186, 2020 WL 5701885, at *4 (E.D. Va. Sept. 23, 2020). Instead, the ALJ must inquire whether there are any jobs the claimant can perform without requesting an accommodation. *Belcher*, 2018 WL 3621211, at *5. The issue here is that I cannot tell from the VE's testimony whether jobs exist that Hansford could perform without submitting a medical statement and securing approval from the hypothetical employer. *Cf. Arthur v. Saul*, No. 2:19-cv-186, 2020 WL 6381136, at * 4 (E.D. Va. June 3, 2020) (affirming ALJ decision because "the VE's testimony

---

[3] The Commissioner does not contest Hansford's characterization that the mask requirement constitutes a reasonable accommodation under the ADA. Accordingly, for the purpose of this discussion, I assume without deciding that Hansford is correct in this regard.

5

was not contingent on potential employers providing any reasonable accommodations" and collecting cases); *Harris v. Colvin*, No. 3:12-cv-2302, 2013 WL 4517866, at *14 (N.D. Ohio Aug. 21, 2013) ("The VE specifically testified that these jobs would be available *even with* the need for sunglasses and five[-]minute bathroom break limitations."). Likewise, I cannot tell whether the VE was assuming that the employers identified would require Hansford to obtain permission first or whether it is an accommodation often allowed without any formal process. *Cf. Jones v. Apfel*, 174 F.3d 692, 694 (5th Cir. 1999) ("Moreover, the expert's reference to the ADA suggests not that he assumed that assembler jobs required accommodation, but that allowing for an employee to alter between sitting and standing is a prevalent accommodation in the workplace."). In short, the record is incomplete.

The Commissioner argues that the ALJ's questions to the VE "clearly [were] asking about jobs Plaintiff could perform if she chose to wear a mask." Dkt. 19-1 at 3. As discussed above, the VE's testimony is anything but clear. At most, the VE's testimony establishes that the number of jobs available would remain the same whether Hansford needed to wear a mask or not. This testimony does nothing to revoke the VE's prior testimony that Hansford would need to provide a medical statement to the employer and have her request to wear a mask approved by the employer. That's the critical inquiry—did the VE identify jobs that would not require Hansford to request reasonable accommodations under the ADA? If so, then Hansford is not disabled. If not, then Hansford is incapable of substantial gainful activity and is therefore disabled under the Act. I simply cannot tell from the hearing transcript or the ALJ's decision.

The Commissioner argues that the ALJ's inclusion of the face mask requirement in Hansford's RFC is wrong and unsupported by the administrative record. *See* Dkt. 19-1 at 3–5. According to the Commissioner, Hansford's treating physician did not "tell her that she needed to wear a mask," and Hansford "did not

6

testify that she wore one whenever she left the house" or when she went to doctor appointments. *Id.* at 4. But, as Hansford points out, "[t]he ALJ determined the RFC and included the limitations regarding Plaintiff's use of a mask," even though the record allegedly does not support that finding. Dkt. 20 at 2. In fact, the ALJ determined that a face mask was required after speaking with the agency's physician, Dr. Anigbogu. *See* Dkt. 14-3 at 58. I am not going to second-guess the ALJ's determination. *See Bennett ex rel. Bennett v. Saul*, No. 3:19-cv-00064, 2019 WL 6255235, at *1 (S.D. Tex. Nov. 22, 2019) (An "ALJ's decision must stand or fall with the reasons stated in the final decision" because I cannot consider "post hoc rationalizations for an agency decision." (cleaned up)). The ALJ determined that Hansford needed a face mask to work. He then determined that Hansford was not disabled based on the VE's testimony that jobs exist in the national economy that Hansford could perform if she provided a medical statement to the employers and obtained approval to wear the mask. This is error. *See Singleton v. Berryhill*, 3:17-CV-00576-MGG, 2018 WL 4579711, at *4 (N.D. Ind. Sept. 25, 2018) ("By allowing the vocational expert to provide testimony about reasonable accommodation . . . , the ALJ has not met his burden at Step 5 of the disability analysis and has erred by injecting this reasonable accommodation analysis into his disability determination."). The only question remaining is whether this error is harmful.

An error is harmless "when it is inconceivable that a different administrative conclusion would have been reached absent the error." *McNeal v. Colvin*, No. 3:11-cv-02612-BH-L, 2013 WL 1285472, at *27 (N.D. Tex. Mar. 28, 2013). The error here is not harmless because I cannot determine whether the VE identified jobs that would not require Hansford to obtain a medical statement and request a reasonable accommodation. *See Singleton*, 2018 WL 4579711, at *3 (remanding where "the ALJ relied on testimony that the vocational expert was not qualified to provide with respect to an arguably reasonable accommodation under the ADA"). I am uncomfortable guessing as to whether such jobs exist. It is conceivable that

7

the ALJ could determine that Hansford is incapable of substantial gainful activity because no available jobs would permit her to wear a face mask without an approved medical statement. The opposite conclusion is just as likely. Remand is appropriate.

## CONCLUSION

For the reasons provided above, Hansford's motion for summary judgment is **GRANTED**, and the Commissioner's motion for summary judgment is **DENIED**. This case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

SIGNED this 17th day of September 2021.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE